The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICKY D. GORDON,<br>Plaintiff,<br><br>v.<br><br>JAY INSLEE, et al.,<br>Defendant | NO. 21-5802-BJR-DWC<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING COMPLAINT** |

## I.   INTRODUCTION

This matter comes before the Court on the Report and Recommendation ("R&R") of U.S. Magistrate Judge David W. Cristel, which recommends granting Defendants' Motion for Summary Judgment and dismissing this action. Dkt. Nos. 42, 33. Plaintiff Deanna Lynn Gordon, formerly known as Ricky or Ricki Gordon, is a transgender female inmate currently incarcerated at the Monroe Correctional Complex, Twin Rivers Unit ("MCC-TRU"). She has asserted claims against a number of Washington State Department of Corrections ("DOC") officials and other Defendants under 42 U.S.C. § 1983, alleging Eighth and Fourteenth Amendment violations. Broadly construed, Plaintiff claims that Defendants have failed to provide constitutionally required treatment for her diagnosed Gender Dysphoria ("GD"), and more specifically, have unduly delayed her gender confirming surgery, which is currently scheduled to take place in October 2023. Plaintiff also claims she is unsafe in a male prison, and that she has limited access

ORDER ADOPTING REPORT AND RECOMMENDATION

- 1

to private toilet and shower facilities. Plaintiff seeks damages, and an order (1) directing compliance with the treatment plans approved by DOC's Gender Dysphoria Care Review Committee; and (2) directing that she be transferred to a female facility.

Having reviewed the R&R, the Motion for Summary Judgment and the briefs and exhibits filed in support of and in opposition to that motion, Plaintiff's Objections to the R&R, and Defendants' Response to those Objections, the Court finds and rules as follows.

## II. BACKGROUND

The R&R contains a thorough recitation of the factual and procedural background of this case, which need not be repeated in full here. *See* R&R at 2-10. In sum, Plaintiff first entered DOC custody on December 29, 2015, and is currently housed at the MCC-TRU. Plaintiff is serving a sentence for one count of first degree rape of a child, first degree child molestation, and two counts of possession of depictions of a minor engaged in sexually explicit conduct, with an earned released date of 2039. Wofford Decl., Dkt. No. 34, ¶ 5. The victim of Plaintiff's crimes was the six-year-old daughter of Plaintiff's ex-wife and criminal co-defendant, Rose Gordon, who is serving a sentence for rape of a child in the first degree and other related crimes at the Washington Corrections Center for Women ("WCCW"). Headley Decl., Dkt. No. 35, ¶ 5.

After entering DOC custody, on February 12, 2016, Plaintiff was diagnosed with Gender Dysphoria. Since then, she has sought and received mental health and hormone therapy treatment pursuant to the DOC's Gender Dysphoria Protocol ("Protocol"), as recommended by her Gender Dysphoria Care Review Committee ("GD-CRC"). *See* Clark Decl. and Exs. thereto. The R&R outlines both the DOC's Protocol, and the history of Plaintiff's treatment subject to that Protocol. *See* R&R at 3-8. Most relevant to Plaintiff's claims here, the GD-CRC initially denied Plaintiff's

request for gender confirming surgery ("GCS"), citing concerns regarding Plaintiff's mental and physical health and the risk of complications from the procedure. However, the GD-CRC reconsidered her request and ultimately issued an approval on March 8, 2021. Plaintiff is scheduled to undergo GCS in October 2023. Clark Decl., ¶9. Plaintiff's claims are based in part on what she says is inadequate treatment of her GD, and specifically a claimed delay in scheduling her surgery subsequent to the March 8, 2021 approval.

Defendants disagree there has been undue or avoidable delay in Plaintiff's GD treatment, citing the thorough GD-CRC review process (outlined in detail in the R&R) and the challenges to providing GCS, particularly in a prison context and during a global pandemic:

> [A]ccess to community surgical providers who offer gender affirming care is very limited. That limited number of providers is even less for those who are willing to accept inmate patients. This resulted in long wait times for initial appointments with the surgical provider and then further long wait times for the surgeon's availability to perform the actual surgery. During the recent pandemic, those wait times were extended even more as there was a long period of time when those providers were not able to perform gender affirming surgeries due to public health mandates.

Defs.' Mot. Summ. Jdgmt. at 9; *see also* R&R at 3-8.

Plaintiff is also challenging her placement in a male facility, claiming that she has been subjected to threats, sexual harassment, and assault by other inmates. In recognition of these concerns, Plaintiff has been given her own cell, and several accommodations have been made for her privacy and safety, including alternative times for her to shower in private. She claims, however, that her cell remains the only private toilet she has access to, and that she is therefore unable to take advantage of activities and recreation outside her cell. She also complains that alternative shower times intended to give her privacy are inadequate. Plaintiff has requested transfer to the WCCW, which is the only female DOC facility in Washington, or in the

ORDER ADOPTING REPORT AND RECOMMENDATION

- 3

alternative, a transfer to an out of state women's facility. She claims that Defendants' failure to transfer her to a female facility is a violation of her constitutional rights.

According to Defendants, Plaintiff's housing assignment is governed by the Prison Rape Elimination Act (PREA) standards, which provide for, among other things, assessment at intake of an inmate's risk of being sexually abused, and semiannual review of an at-risk inmate's housing placement. Wofford Decl., ¶ 3. They claim they have taken measures to ensure the safety of Plaintiff, who has not filed "any substantiated PREA allegations." Defs.' Rep. at 6. In addition, Defendants claim there are 31 other transgender female inmates currently housed at MCC-TRU, and that "there is no evidence of systemic violence or harassment against these individuals because of their transgender status." Wofford Decl., ¶ 8; Defs.' Rep. at 6.

Defendants have considered but denied Plaintiff's repeated requests for transfer to WCCW. Wofford Decl., ¶ 6. They cite Plaintiff's record of sexually predatory behavior against female victims, and the fact that Rose Gordon, Plaintiff's ex-wife and co-defendant, is housed at WCCW and has submitted a "keep separate" request out of a claimed fear for her safety. *See* Headley Decl., ¶¶ 4-11; Ex. A to Headley Decl., at 3 ("Keep separate request" stating Plaintiff "poses a significant risk to the safety of Rose Gordon . . . The facility is not able to address the safety risk against Rose Gordon if [Plaintiff] were to transfer to the facility."). Defendants claim they have also "pursued out of state placement options in other women's facilities," but so far have been unable to identify an out of state women's facility that will accept Plaintiff. Wofford Decl., ¶ 4. They aver "[i]n the event none of these states are willing to take Gordon for out of state placement, DOC will engage with other states and continue to pursue other housing alternatives that are appropriate." *Id.*, ¶ 7.

ORDER ADOPTING REPORT AND RECOMMENDATION

- 4

## III.   DISCUSSION

### A.  Standard for Summary Judgment and Review of R&R

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1).

The Court adopts the standards, governing summary judgment and claims under 42 U.S.C. § 1983, as accurately laid out in the R&R. *See* R&R at 10-12.

### B.  Fourteenth Amendment: Equal Protection and Due Process Claims

*1. Equal Protection*

The R&R concludes that Plaintiff's Equal Protection claims should fail because "Plaintiff has submitted no evidence showing a discriminatory motive for either the alleged delay in scheduling her GCS procedure or the denial of her requested transfer to WCCW." R&R at 18. Defendants, by contrast, have submitted evidence supporting plausible, constitutionally permissible explanations for their actions. Nothing in Plaintiff's Objections calls the soundness of the R&R's conclusion into question, and the Court agrees that Plaintiff's Equal Protection Claims should be dismissed.

Plaintiff here has failed to provide any specific allegations, let alone evidence, that any of Defendants' actions were taken "with an intent or purpose to discriminate against the plaintiff *based upon membership in a protected class*" as a transgender female. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation omitted). To the contrary, in her Objections to the R&R,

ORDER ADOPTING REPORT AND RECOMMENDATION

- 5

Plaintiff states she has learned that "other trans-women had been transferred to the female prison from a male prison, even though some having sex crimes and a lot of current sexual infractions while in prison." Obj. at 2 (*sic*); *see also id*. at 5 ("The DOC has never gave a reasonable cause not to have ever set up a transfer out of state since 2016 and *after they started sending other trans-women to a female prison* and still would not set up a out of state transfer maid in a violation of equal treatment do to discrimination.") (*sic*, emphasis added). Plaintiff's claim—that she is being discriminated against because other transgender women have been transferred and she has not—misapprehends the nature of the right that the Fourteenth Amendment protects. A Fourteenth Amendment discrimination claim requires Defendants to have acted with animus towards her *based upon her membership in a protected class*. *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001) (citations omitted). Plaintiff's admission that Defendants have approved transfer of other transgender women to female facilities, particularly in the absence of any direct evidence of discriminatory intent, is tantamount to a concession that such animus here is lacking.

Courts have recognized that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (citations omitted). Even then, however, a plaintiff must allege and prove that the defendant's actions are motivated by a discriminatory intent, and taken in the absence of a rational basis. *Id*. The evidence here clearly demonstrates a rational basis for Defendants' denial of Plaintiff's request for transfer to WCCW: safety and security concerns about Plaintiff and her co-defendant being housed in the same facility, based in part on the nature of the crimes they committed together, and in part on Rose Gordon's "keep separate" request. *See*

ORDER ADOPTING REPORT AND RECOMMENDATION

- 6

Headley Decl., ¶¶ 3–5, 7–8; Ex. A thereto. These are precisely the kind of penological considerations that require a court's deference. *See Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'") (citing *Pell v. Procunier,* 417 U.S. 817, 827 (1974)). There is no evidence in the record—let alone "substantial" evidence—that Defendants' stated reasons for denying Plaintiff's transfer request to WCCW are pretextual or "exaggerated."

The evidence indicates that Defendants will continue to monitor Plaintiff's safety in accordance with PREA standards, and are making efforts to find a women's facility out of state that will accept the Plaintiff. Wofford Decl., ¶¶ 7-8. Plaintiff's mere "belief" that Defendants are acting with improper motive, in the absence of any evidence, is insufficient to withstand summary judgment. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (to withstand summary judgment, plaintiff must "'put forward specific, nonconclusory factual allegations' that establish improper motive."). Plaintiff's Equal Protection claim is therefore dismissed.

2. Due Process[1]

The Due Process Clause protects prisoners from deprivations of life, liberty, or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a

---

[1] While Plaintiff does not expressly refer to the Due Process clause, she does repeatedly claim violations of her Fourteenth Amendment rights; the R&R was correct in liberally construing her claim to include Due Process.

ORDER ADOPTING REPORT AND RECOMMENDATION

- 7

claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977). In the prison context, such liberty interest is interpreted narrowly, and the Supreme Court has concluded that the Constitution provides no liberty interest in, among other things, remaining in the general population, *see Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); in staying at a particular institution, *see Meachum*, 427 U.S. at 225-27; or in remaining in a prison in a particular state, *see Olim v. Wakinekona*, 461 U.S. 238, 245-47 (1983). Although Plaintiff does not expressly invoke the Due Process Clause, the R&R recommends dismissal of any due process claim Plaintiff is attempting to assert, because "[p]risoners have no liberty interest in avoiding being transferred to another prison, or to be housed in a particular institution." R&R at 16 (citations omitted).

In addition to failing to assert a liberty interest, Plaintiff has also failed to demonstrate that she has been denied any process she might be due. She does not challenge the DOC's Gender Dysphoria Protocol or claim that the Gender Dysphoria Care Review Committee failed to follow that Protocol. Plaintiff's "belief" that treatment has been unduly delayed, in the face of substantial evidence of Defendants' efforts to provide medically appropriate and constitutionally required care, is inadequate. *See* R&R at 3-8; Exs. C, D, & E to Clark Decl. (hundreds of pages including mental health records, medical encounter provider notes, consultation records related to GD treatment). Defendants have also submitted significant detail regarding their housing and safety protocols for transgender inmates, stating Plaintiff's request for transfer to WCCW is periodically reviewed. *See* Wofford Decl. As noted, "transfer requests have been denied due to multiple safety concerns including her co-defendant's concerns of continued abuse, the inability to ensure that the

ORDER ADOPTING REPORT AND RECOMMENDATION

- 8

two remain apart while at WCCW, Gordon's history of predatory behavior and Gordon's refusal to complete Court ordered treatment." *Id*., ¶ 6. Defendants' evidence demonstrates that they continue to seek Plaintiff's transfer to an out of state facility, to date without luck. *Id*. ¶ 7. While Plaintiff may be dissatisfied with the results of these efforts, there is no evidence that the process being provided is constitutionally deficient. For this reason, in addition to those stated in the R&R, to which Plaintiff has not raised objection, any Due Process Claim Plaintiff is attempting to assert must be dismissed.

**C. Eighth Amendment**

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). There is both an objective and a subjective component to an Eighth Amendment claim that prison officials have failed to prevent harm: first, a plaintiff must show "[s]he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, a plaintiff must show that the officials acted with "deliberate indifference" to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 832, 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993). The R&R recommends dismissal of Plaintiff's claims of Eighth Amendment violations based on treatment of her GD and denial of her housing request, concluding that Plaintiff has failed to meet both the objective and the subjective prongs of the test. The Court reviews each claim in turn.

*1. Gender Dysphoria Treatment*

The R&R accurately sets forth the law governing Eighth Amendment claims based on claimed lack of medical care. *See* R&R at 24-26. In sum, "to maintain an Eighth Amendment

ORDER ADOPTING REPORT AND RECOMMENDATION

- 9

claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-pronged test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (citation omitted).[2]

The R&R reviews the timeline of Plaintiff's Gender Dysphoria treatment and consultations related to her Gender Confirmation Surgery. R&R at 3-8. In recommending dismissal of Plaintiff's claim, the R&R credits Defendants' "unrebutted evidence" that any delay in the surgery—now scheduled for two and a half years after the Gender Dysphoria Care Review Committee approved the procedure in March 2021—"is a result of the limited number of practitioners in the field that accept prisoner patients, and a backlog caused by the suspension of procedures during the COVID-19 pandemic." R&R at 26-27; Clark Decl., ¶ 6; Rainer Decl., ¶ 7. Furthermore, any claimed delays leading up to the approval in March 2021, as noted in the R&R, was a product not of any deliberate indifference by Defendants, but a reflection of the challenges and complexities of treating Gender Dysphoria, particularly in a prison setting, and a result of recommendations by Plaintiff's GD treatment team, which was concerned with the risks of complications, and Plaintiff's unrealistic expectations, associated with the surgery:

> The report of the March 12, 2020 GD-CRC meeting continued to support the Committee's previous finding of GD and support for hormone therapy—but the

---

[2] The Ninth Circuit has acknowledged that "the medical consensus is that GCS is effective and medically necessary in appropriate circumstances," *Edmo v. Corizon, Inc.*, 935 F.3d 757, 795 (9th Cir. 2019), and although the GD-CRC initially denied Plaintiff's request for GCS, it appears that at this point there is no dispute that Plaintiff is entitled to the procedure.

ORDER ADOPTING REPORT AND RECOMMENDATION

- 10

> Committee concluded it was unable to support moving forward with an evaluation for GCS at that time. *The report notes the consensus of plaintiff's treatment team that her lack of engagement in mental health treatment for her co-morbid conditions, and in health care treatment of her medical conditions, placed her at high risk for complications with surgery. The Committee also noted unrealistic expectations for the surgery.* The Committee concluded all of these factors "call into question whether the patient is currently able to provide adequate informed consent regarding GCS or . . . able to adequately cope" with post-surgical recovery and transition. These are important concerns in evaluating a patient for an irreversible procedure like GCS.

R&R at 28 (citing Clark Decl. Ex. c at 32–33; Rainer Decl., ¶ 5) (emphasis added).

In her Objections, Plaintiff has failed to provide any information or authority calling Defendants' evidence or the R&R's recommendation into question, apart from Plaintiff's unsubstantiated belief that the process could have been quicker. There is simply no evidence that any delays in treatment were a result of a deliberate indifference to Plaintiff's serious medical needs. The Court therefore adopts the R&R's recommendation that Plaintiff's Eighth Amendment claims, related to the scheduling of her Gender Confirmation Surgery, be dismissed.

2. *Housing Transfer Request*

Finally, Plaintiff seeks transfer to WCCW, the Washington DOC's only female facility, or, in the alternative, to an out of state women's facility, claiming that she is at risk of harm as long as she is housed in a male facility. Plaintiff claims she "is continually being sexually abused by inmates garbing her breast's, bottom, ask for sexual favors, inmates trying to get Plaintiff to enter there cell for sex." Pl.'s Resp. to Mot. for Summ. Jdgmnt., at 4 (*sic*). Her movement within the prison is limited, she claims, because "[t]here are no bathrooms for a woman in the recreation areas or anywhere in the facility out side of Plaintiff's cell." *Id*. She also alleges that accommodations made for her to shower at alternative times to allow for greater privacy have been inadequate, and that she consequently has gone for months at a time without showering.

ORDER ADOPTING REPORT AND RECOMMENDATION

- 11

Defendants have denied Plaintiff's transfer request to WCCW, citing the security concerns referenced above and detailed in the R&R.[3] *See* R&R at 9 (citing Headley Decl.; Ex. A thereto); *supra*, at 4. They assert they are continuing to pursue the possibility of placement at an out of state women's facility. Wofford Decl., ¶ 7.

The R&R concludes that Plaintiff's allegations lack the requisite specificity to support her Eighth Amendment claims, failing to support either of the two prongs articulated in *Farmer*. *See* R&R at 21-23 (citing *Williams v Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) ("Speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future health.")). The Court agrees. First, the few passing references that Plaintiff makes to physical harm she has suffered are simply too vague and generalized to support a conclusion she is at "serious risk of substantial harm." For example, in her response to Defendants' Motion for Summary Judgment, Plaintiff refers to "Ms. Gordon being scared witless and physically injured by evidence of bruises on Ms. Gordon's arms." Pl.'s Resp. at 17 (*sic*). She provides no further information, however, regarding how or when she obtained those bruises, or who gave them to her under what circumstances. Her claims of "continually being sexually abused" are similarly lacking in any meaningful detail. In the absence of any detailed allegations regarding when she has been assaulted, by whom, or under what circumstances, the Court concurs with the R&R's conclusion that Plaintiff has failed to demonstrate that she is at "serious risk of

---

[3] Defendants submitted evidence that Rose Gordon has made a "keep separate" request, which claims Plaintiff would be a security and safety risk to her if Plaintiff were transferred to WCCW. *See* Ex. A to Headley Decl. Plaintiff claims that Rose Gordon's statements supporting the keep separate request are untrue. However, the Court need not credit the truth of Rose Gordon's statements to defer to Defendants' judgment that housing the two co-defendants in a single facility, given the nature of the crimes they committed together and Rose Gordon's statements (whether true or not), gives rise to serious security concerns.

ORDER ADOPTING REPORT AND RECOMMENDATION

- 12

substantial harm."[4] *See* R&R at 21-22 (citing, *inter alia*, *Goff v. Arizona*, 526 F. Supp. 3d 551, 568–69 (D. Ariz. 2020)). Similarly, although Plaintiff alleges she has been the subject of threats and taunts, she provides no substantiating detail that would elevate these threats to the level of "serious risk of substantial harm" contemplated by the Eighth Amendment. *Blacher v. Johnson*, 517 Fed. App'x. 564 (9th Cir. 2013) (Eighth Amendment's protections did not extend to mere verbal sexual harassment)).

Plaintiff has also failed to demonstrate the second prong of the *Farmer* test: that Defendants have acted with deliberate indifference. As referenced above and in the R&R, Defendants have provided substantial evidence of measures taken to protect Plaintiff from the harm she fears, and continue to monitor her safety pursuant to PREA protocol. Wofford Decl., ¶ 3. They have provided her with a single cell, and made arrangements for separate showering times. *See* R&R at 23-24. They pursued the possibility of Plaintiff's placement at WCCW, and concluded (presumably reasonably) that it is not an option; and they continue to seek transfer to an out of state female facility. Wofford Decl., ¶ 7. These efforts are the antithesis of "deliberate indifference."

Plaintiff does not have a constitutional right to choose the facility in which she will be incarcerated, and she does not, as a transgender female inmate, have a right to be housed in a female facility. *Richardson v. D.C.*, 322 F. Supp. 3d 175, 184–85 (D.D.C. 2018) ("*Farmer* does not hold that transgender female inmates, notwithstanding their own housing preferences, may never be celled with male inmates."); *see also Minor v. Dilks*, 2022 WL 3369707, at *6 (D.N.J.

---

[4] Plaintiff has submitted several affidavits of fellow inmates, who speak generally about harassment Plaintiff has endured, but these statements too all fail to include sufficient detail that would support a finding of a serious risk of substantial harm. *See* Affs. of Jolicoeur Calvin E., ¶ 4 Dkt. No. 39-1 ("I have witnessed the plaintiff being verbally harassed many time[s] while she was just walking to her cell."); Aaron Thomas, ¶ 7 ("I have personally witnessed Ms. Gordon being harassed even spied on when she was trying to shower.").

ORDER ADOPTING REPORT AND RECOMMENDATION

- 13

Aug. 16, 2022) ("Here, the alleged violation in question is Defendants' failure to immediately transfer Plaintiff to a female prison or housing with other transgender inmates . . .. What few cases do exist on the issue of the appropriate prison placement of transgender inmates suggest that no such clearly established right exists.") (citations omitted); *Bradley v. Price*, 2021 WL 1895062 (W.D. Wis. May 11, 2021) ("I have found no case holding that single-cell confinement is required for any transgender female inmate housed in a male prison."). While Plaintiff does have a right to be safe from serious harm by other prisoners, she has failed to allege facts demonstrating that she is at "substantial risk" of such harm, or that Defendants have acted with "deliberate indifference." Consequently, her Eighth Amendment claims stemming from Defendants' denial of her request for transfer to a women's facility must fail.

### IV.   CONCLUSION

For the foregoing reasons:

(1) The Court adopts the Report and Recommendation.

(2) Defendants' Motion for Summary Judgment (Dkt. No. 33) is granted, and Plaintiff's claims are dismissed with prejudice.

(3) The Clerk is directed to send copies of this Order to Plaintiff, counsel for Defendants, and to the Hon. David W. Christel.

DATED this 10th day of April, 2023.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER ADOPTING REPORT AND RECOMMENDATION

- 14